WILLIAM J. O'GRADY, ESQ.
Nevada Bar No. 10415
DAVID J. WEDEMYER, ESQ.
Nevada Bar No. 11318
O'GRADY & WEDEMEYER
410 S. Rampart Blvd, Suite 390
Las Vegas, Nevada 89145
(702) 726.6807
wogrady@owlawlv.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JANE WALDROP, an individual, WILLIAM WALDROP, an indvidual,<br><br>Plaintiffs,<br><br>vs.<br><br>GREEN TREE SERVICING LLC, DOES I-V and ROE BUSINESS ENTITIES VI-X, inclusive,<br><br>Defendants. | CASE NO.<br><br>DEPT. NO.<br><br><br>**COMPLAINT**<br><br>**(DEMAND FOR JURY TRIAL)** |

COMES NOW Plaintiffs, JANE WALDROP ("Plaintiff(s)" or Ms. Waldrop) and WILLIAM WALDROP ("Plaintiff(s) or Mrs. Waldrop"), by and through their undersigned attorneys, allege upon knowledge as to herself and himself and his and her own acts, and as to all other matters upon information and belief, brings this Complaint against the above-named Defendants and in support thereof alleged the following:

1. This is an action for actual, statutory and punitive damages, costs and attorneys' fees brought pursuant to 15 U.S.C. §§ 1681 *et seq.* (Fair Credit Reporting Act of "FCRA"); 14 U.S.C. 1692 *et seq.* 12 U.S.C. §§ 2601 *et seq.* (Real Estate Settlement Practices Procedures Act or "RESPA"); 15 U.S.C. § 1962 *et seq.* (Fair Debt Collection Practices Act); Nevada Revised Statutes (hereinafter "NRS"), Chapters 598 *et seq.*, and 649 *et seq.*, as amended, can common law tors ("State Acts").

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 12 U.S.C. § 2614 involving property located within this District, 15 U.S.C. §§ 1681p, 15 U.S.C. § 1692k(d), and 28 U.S.C. 1331. Supplemental jurisdiction exists for the state law claims, pursuant to 28 U.S.C. § 1367 and rule 18(a) of the Federal Rules of Civil Procedure ("FRCP").

3. Venue is conferred by 28 U.S.C. §§ 1391, in that the acts and transactions occurred in this District, Plaintiffs reside in this District and Defendants transact business in the District.

## THE PARTIES

4. Plaintiff Jane Waldrop is a natural person and owns a home in Clark County, Nevada, which is her primary residence. Plaintiff is a "consumer" and "person" protected by the FCRA, FDCPA and RESPA.

5. Plaintiff William Waldrop is a natural person and owns a home in Clark County, Nevada, which is her primary residence. Plaintiff is a "consumer" and "person" protected by the FCRA, FDCPA and RESPA.

6. Defendant GREEN TREE SERVICING, LLC ("Green Tree") was the servicer of Plaintiff's mortgage loan and in its capacity as a loan servicer, Green Tree acts as a third party debt collector for the owner of Plaintiff's mortgage loan. Green Tree acquired the servicing rights to Plaintiff's mortgage disputed herein when alleged to be in default and therefore Green Tree is not excluded as a debt collector for the purposes of the FDCPA under 15 U.S.C. 1692a(6)(F)(iii). *See Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355 (6th Cir. 2010). At all times relevant hereto Green Tree was also a "furnisher" as governed by the FCRA.

7. Plaintiffs are unaware of the true names and legal capacities, whether individual, corporate, associate, or otherwise of the Defendants DOES 1-V and ROE Corporations VI-X, sued herein inclusive, and therefore sues Defendants by such ficitcious names.

8. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants designated herein as DOES I-V and ROE Corporations IV-X, are in some way legally responsible

and liable for the events referred to herein, and proximately caused the damages alleged herein.

9. Plaintiffs pray leave to insert said Defendants' true names and legal capacities when ascertained.

10. At all times material hereto, and in doing the acts and omissions alleged herein, the Defendants and each of them, including DOES I-V and ROE Corporations VI-X, acted individually and/or through their officers, agents, employees, and co-conspirators, including fictitious Defendants named herein, each of whom was acting within the purpose and scope of that agency, employment and conspiracy, and said acts and omissions were known to, and authorized and ratified by, each of the other Defendants.

11. Plaintiffs are informed and believe and thereon allege that at all times mentioned herein each of the Defendants sued herein was the owner, partner, shareholder, manager, officer, director, agent, servant, and/or employee of his, her or its co-Defendants and in doing the things hereinafter mentioned was acting in the scope of his, her or its authority as such owner, partner, shareholder, manager, officer, director, agent, servant and/or employee, and with the permission, consent and/or ratification of his, her or its Defendants; and that each of said fictitiously named Defendants, where an individual, corporation, association or otherwise, is in some way liable or responsible proximately thereby as hereinafter alleged.

12. All conduct of the Defendants and DOE and/or ROE Corporation Defendants as alleged herein, was on each other's behalf, within the course and scope of agency each for the other; each was alter ego for the other and/or was in a partnership or joint venture with the other, and all conduct of each was within the course and scope of that agency, alter ego, partnership and/or joint venture, and as such, the corporate fiction should be disregarded.

///
///
///
///

## FACTUAL ALLEGATIONS

13. Plaintiffs repeat, reallege, and incorporates by reference paragraphs one through eleven, inclusive, above.

14. Plaintiffs, JANE WALDROP, and her husband WILLIAM WALROP, own the single family dwelling located at 3415 Glendale Circle North Las Vegas, NV 89030 ("Subject Property").

15. Prior to April 2013, Plaintiffs had an outstanding prommisory note and deed of trust ("prior or previous loan") recorded against the Subject Property which was being serviced by Bank of America, N.A.

16. Effective April 1, 2013, Bank of America, N.A. transferred servicing rights to the previous loan to Defendant.

17. During April of 2013, Plaintiffs paid off the previous loan as part of a refinance with WJ Bradley (the "Refinance")

18. As part of the Refinance, Plaintiffs executed a new promissory note and deed of trust ("current loan") in favor of WJ Bradley.

19. The current loan was recorded against the Subject Property on April 10, 2013.

20. The proceeds from the Refinance paid off the previous loan executed by Plaintiffs in favor of Countrywide Home Loans, Inc., which is now part of Bank of America.

21. A substitution and reconveyance for the previous loan was recorded in Clark County on May 15, 2013. Although the previous loan was paid in full and reconveyed of record, there was a corporate assignment of deed of trust that purported to assign the previous loan to Defendant, which was recorded on July 25, 2013.

22. The previous loan was paid in full and reconveyed of record, and there is no longer a lien and deed of trust in favor of Defendant or its successors.

23. On or about July 8, 2014, Plaintiffs received a correspondence from Defendant confirming Defendant's records indicate the previous loan has been paid in full to Defendant.

24. Plaintiffs received a letter dated July 15, 2013 from Defendant confirming Green Tree received a payoff for the previous loan on April 18, 2013. However, Defendant alleged in such letter the funds received did not satisfy the total payoff amount. Defendant further alleged Plaintiffs owed a remaining balance of four thousand four hundred six dollars and ninety-three cents ($4,446.93), good through July 30, 2013 with a pier diem interest of twenty-eight dollars and fifteen cents ($28.15).

25. Further, as set forth in the July 15, 2013 correspondence, Defendant reserved the right to demand additional funds to correct any error or omission regarding the payoff figure for the previous loan and admitted it was a debt collector that was attempting to collect a debt.

26. In August of 2013, Plaintiffs received phone calls and other correspondence from Defendant attempting to collect an alleged debt owed pursuant to the previous loan.

27. Plaintiff received a demand for payment from Defendant dated August 8, 2013. Defendant alleged Plaintiff owed five thousand eight hundred fifty-nine dollars and forty-four cents ($5,859.44). In said demand for payment, Defendant set forth the following language in an attempt to collect an alleged debt **"YOUR ACCOUNT IS SERIOUSLY PAST DUE! CALL 800-643-0202 FOR PAYMENT ARRANGMENTS … A late charge will be assessed if payment is not received within 15 days after the due date listed above …"** This correspondence was an attempt to collect a debt without the mandated mini-Miranda required by the FDCPA and clearly attempts to solicit a payment for a debt that is not owed.

28. Plaintiffs received another demand for payment from Defendant dated September 8, 2013, Defendant alleged Plaintiff owed six thousand nine hundred eighty-one dollars and fifty one cents ($6,981.51). In said demand for payment, Defendant set forth the following language in an attempt to collect an alleged debt **"YOUR ACCOUNT IS SERIOUSLY PAST DUE! CALL 800-643-0202 FOR PAYMENT ARRANGMENTS … A late charge will be assessed if payment is not received within 15 days after the due date listed above …"** This correspondence was an attempt to collect a debt without the mandated mini-Miranda required by the FDCPA and clearly

attempts to solicit a payment for a debt that is not owed.

29. Based on information and believe, on or about the last week of September 2013 or the first week in October 2013, Plaintiffs sent a qualified written request pursuant to RESPA ("QWR") to Defendant.

30. Plaintiffs received a correspondence dated October 30, 2013 from Defendant as a purported response to their QWR ("QWR response").

31. Defendant's QWR response alleged on April 11, 2013, one hundred fifty-three thousand five hundred sixty-nine dollars and fifteen cents ($153,569.15) was received, and was considered sufficient to payoff Plaintiffs' previous loan. However, it was later discovered that the February 1, 2013 payment, prior to the transfer had been returned, due to insufficient funds. As a result, your account had to be reopened. As of October 30, 2013, Defendant alleged one thousand two hundred eighteen dollars and seventy-seven cents ($1,218.77) was required to payoff and close Plaintiffs' previous loan. Defendant did not provide any ledger or means of substantiating the alleged debt.

32. Plaintiffs did in fact remit payment in such amount to resolve the alleged outstanding balance although they knew it to be an overpayment in order to stop the harassing communications from Defendant. However, such payment was returned to Plaintiffs.

33. Based on information and belief, Plaintiffs sent a subsequent QWR which Defendant received on December 2, 2013. Defendant acknowledged receipt of this subsequent QWR on December 2, 2013 via correspondence dated December 12, 2013.

34. Defendant sent a correspondence to Plaintiffs dated December 12, 2013, reiterating the language set forth in Defendant's purported response to Plaintiffs' QWR dated October 30, 2013 (e.g. that the previous loan was paid in full, but Plaintiffs still owed $1218.77 …). Defendant did not provide any ledger or means of substantiating the alleged debt.

35. Defendant sent Plaintiffs a billing statement dated February 8, 2013 demanding payment of twelve thousand five hundred ninety one dollars and eighty six cents ($12,591.86) as the

alleged debt owed to Defendant from the previous loan. Set forth in this billing statement as an attempt to frighten Plaintiffs and persuade them to make a payment, is the following statement "Your account is now severely delinquent and your immediate action is required …". Defendant knew the account was paid in full, but yet demanded payment and immediate action for a debt and/or amount for which Defendant knew it could not collect.

36. Defendant sent Plaintiffs a letter dated February 27, 2014 confirming that the previous loan has been paid in full.

37. Since Defendant obtained the servicing rights to the previous loan up to and including today, Defendants have made continuous attempts to written and oral to collect on the previous loan which it claims to have received when in default.

38. Some of the QWRs were not timely acknowledges and/or responded to by Defendant.

39. Since Defendant obtained the servicing rights of the previous loan, Plaintiff is informed and believes that Defendant has been mis-reporting the status of the previous loan to all three (3) major credit bureau on a monthly basis, and continues this practice at all times relevant herein.

40. As a result of Defendant's acts and/or omissions, Plaintiff has suffered severe emotional and physical distress, including increased anxiety and depression for which medication has been required and the increase physical symptoms relating to increased levels of stress including without limitation, gastrointestinal issue, weight loss and sleeplessness.

41. Defendant's acts and/or omissions are the direct and proximate cause of Plaintiffs' injuries and is thus liable for all statutory and actual damages suffered by Plaintiff.

42. Plaintiffs were forced to retain the services of counsel and therefore, Defendant is liable for attorneys' fees and costs.

///

///

## COUNT I – VIOLATION OF RESPA

43. Plaintiff repeats, realleges and incorporates by reference the foregoing paragrpahs, inclusive.

44. RESPA establishes the requirements for how a mortgage loan servicer or lender must conduct its post-closing servicing of the loan.

45. 12 U.S.C. § 2605(e) details the duties and statutotry oblgiations of a loan servicer or lender in receiv ing and responding to borrower written inquires.

46. Under RESPA, if a servicer receives a QWR the servicer must acknowledge receipt of the QWR within twenty (20) days.

47. A QWR is a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to indentify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent appcliable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

48. The Subject correspondeonces reference in aforementioned paragraphs were QWR(s) under RESPA because they:

    a. Identified the subject borrower,

    b. Identified the subject loan,

    c. Identified the subject property, and

    d. Included a statement of the reasons the borrower believed the account to be in error.

49. Under 12 U.S.C. § 2605(e)(1)(A) a loan servicer shall provide a written response acknowledging receipt of the correspondence within twenty (20) days.

50. Defendant failed to acknoweldge receipt of the QWR(s) within twenty (20) days.

51. Under 12 U.S.C. § 2605(e)(2) not later than sixty days after receipt of the QWR, the servicer shall:

(C) after conducting an investigation; provide the borrower with a written explanation or

clarification that includes –

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telehone number of an indivudal employed by, or the office or department of, the servicer who can provide assistance to the borrower.

52. Defendant further failed to respond to the QWR or provide any of the information sought in the request. Among the information that was not included was how or why Plaintiff was liable for any mortgage being serviced by Defendant.

53. Under 12 U.S.C. § 2605(e)(3), during the 60 day period beginning on the date of the servicer's receipt of Plaintiffs' QWRs relating to a dispute regarding the borrower's previous loan and payments thereof, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency, as such term is defined under 15 U.S.C. § 1681a.

54. Defendant further failed to comply with this section by continually reporting Plaintiffs as delinquent or reopening the previous loan as an open account on Plaintiffs credit throughout the time Defendant was allegedly investigating Plaintiffs' request for information and correction.

55. Defendant willfully violated RESPA in one or more of the following ways, by example only and without limitation;

 a. By failing to properly and lawfully account for an apply all payments made by Plaintiffs;

 b. By reporting to any credit bureau that the previous loan remained an open account;

 c. By failing to make appropriate corrections to the Plaintiffs' account and transmit written notification of such correction to the Plaintiffs (12 U.S.C. § 2605(e)(2)(A));

 d. By failing to provide the Plaintiff with a written explanation or clarification that includes a statement of the reason that they believe the Plaintiff's account to be

correct and the name and telephone number of an individual employed by each of them who could provide assistance to the Plaintiff (12 U.S.C. § 2605(e)(2)(B));

 e. By failing to provide the Plaintiffs with a written explanation or clarification that included the information required by the Plaintiff or an explanation of why the information requested was unavailable or could not be obtained by Defendant and the name and telephone number of an individual employed by each of them who could provide assistance to the Plaintiff (12 U.S.C. § 2605(e)(2)(C));

 f. By providing information regarding any overdue payment owed by the Plaintiffs and relating to the period described in the QWRS to a consumer reporting agency during the 60 day period which began on the date Defendant received the QWRS (12 U.S.C. § 2605(e)(3);

 g. By failing to properly and lawfully investigate and act upon the disputes enumerated in the Plaintiffs' QWRs (12 U.S.C. §2506(e)(2)(C); and

 h. By continuing to report a derogatory payment history and/or false status of the previous loan account while a response to the QWR was due and pending.

56. Under 12 U.S.C. 2506(f), whomever fails to comply with any provision of RESPA shall be liable to the borrower(s) for any amount equal to the sum of (a) any actual damages to the borrower and (b) any additional damages that the court may allow, in the case of a pattern of practice of noncompliance with the requirements of this section in the amount not to exceed $2,000.00

## COUNT II – VIOLATIONS OF THE FCRA

57. Plaintiffs repeat, reallege, and incorporate by reference paragraphs one through fifty-seven inclusive, above.

58. 15 U.S.C. § 1681s-2b explains the responsibilities of furnishers of credit information after they have been notified by a credit reporting agency that the consumer disputes the credit information provided by the furnisher. Upon receiving notice of a dispute, the furnisher is to review

all relevant information provided by the consumer reporting agency, conduct a reasonable investigation and report the results to the appropriate consumer reporting agencies. The consumer may bring a cause of action against the furnisher if it does not comply with the provisions of 15 U.S.C. § 1681 1s-2b.

59.     Based upon information and belief, Plaintiffs communicated their dispute regarding the derogatory credit information to Equifax, Experian and TransUnion. Thereafter, Plaintiffs are informed and therefore believe that each of these credit reporting agencies notified Defendant of the dispute in accordance with 15 U.S.C. §1681 1i(a)(2).

60.     Thereafter, Plaintiffs are informed and believes each time Defendant failed to review all relevant information provided by the credit reporting agencies and/or conduct a reasonable investigation to ascertain whether the derogatory information it had reported was incomplete or inaccurate, in violation of 15 U.S.C. § 1681 1s-2b.

61.     In addition, Plaintiffs are informed and believe Defendant notified the credit reporting agencies the derogatory credit information reported was correct and failed to notify the credit reporting agencies that the account was disputed.

62.     As a direct and proximate cause of Defendant's violations, Plaintiffs have suffered actual, general, special and exemplary damages, and are entitled to recover his costs and attorneys' fees.

### COUNT III – VIOLATIONS OF FDCPA

63.     Plaintiffs repeat, reallege and incorporate by reference paragraphs one through sixty-three inclusive, above.

64.     Defendant's collections efforts violated, *inter alia*, 15 U.S.C. § 1692(d)(e)(f)&(g).

65.     As a direct and proximate cause of Defendant's violations, Plaintiffs are entitled to recover his actual damages, statutory damages, costs and attorneys' fees. \

/ / /

/ / /

## COUNT IV – DECEPTIVE TRADE PRACTICES

66.     Plaintiffs repeat, reallege and incorporate by reference paragraphs one through sixty-five, inclusive, above.

67.     Pursuant to NRS §§ 41.600, 598.0915, 598.092 and 598.0923, the Defendant knowingly engaged in predatory, wrongful, fraudulent and deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act ("NDTPA") by knowingly engaging in certain prohibited conduct, including without limitation:

   a. Knowingly making any false representation in a transaction;

   b. Knowingly misrepresenting the legal rights, obligations or remedies of a party to a transaction;

   c. Violates a state or federal statute or regulation relating to the sale or lease of goods or services; and Uses coercion, duress or intimidation in a transaction.

68. Defendant has also violated the NDTPA by violating provisions of the NRS Chapters 598 *et seq* and *649 et seq,* by using device, subterfuge, pretense or deceptive means or representations to collect any debt.

69. NRS 598 (NDTPA) and NRS 649 (collection agency practices), in tandem, allow a state claim for deceptive trade practices where the collection agency engages in harassing tactics. Specifically, NRS 649.370 Violation of federal Fair Debt Collection Practices Act, states: "A violation of any provision of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1982[sic] *et seq.*, or any regulation adopted pursuant thereto, shall be deemed to be a violation of this chapter."

70. Defendant acted in bad faith and unfairly with the intent to deprive Plaintiffs of their rights or property. Furthermore, Defendant knew of the probable harmful consequences of its wrongful acts and engage in a willful and deliberate failure to act to avoid those consequences.

71. As a direct and proximate cause of the Defendant's deceptive trade practices, as herein alleged, Plaintiffs have been damages, and further alleges, that Defendant, in knowingly engaging in the aforementioned deceptive trade practices, have acted willfully, intentionally, maliciously and

fraudulently, with the intent to deceive and defraud the Plaintiff, with great recklessness and carelessness, and in total disregard of the consequences of their intentional actions upon Plaintiff, thereby entitling the Plaintiff to exemplary/punitive damages.

72. As a result of the above acts and/or omissions Defendants, Plaintiffs have suffered actual damages including, but not limited to, damage to reputation, anxiety, indignation, irritability, nervousness, fear, worry, loss of happiness, depression, gastrointestinal issues, loss of sleep, stress, and anger and are entitled to equitable relief, actual damages, general damages, exemplary damages, fees and costs, under NRS §41.600 *et seq.*

## COUNT V - NEGLIGENCE

73. Plaintiffs repeats, realleges and incorporates by reference paragraphs one through seventy-three, inclusive, above.

74. Defendants had a duty to properly and accurately service Plaintiff's loan.

75. Defendants breached their duty to maintain property and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance accounting and servicing of loan records in a non-negligent manner.

76. As a direct and proximate cause of Defendants' above-described conduct, Plaintiffs have suffered actual, general and special damages.

## DEMAND FOR JURY TRIAL

77. Please take notice that Plaintiffs demand a trial by jury in this action.

///
///
///
///
///
///
///
///

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays that this Court enter judgment in their favor and against Defendants, and each of them as follows:

1. For actual damages according to proof;
2. For special damages according to proof;
3. For general damages according to proof;
4. For punitive damages in an amount to be determined according to proof;
5. For judgment against all Defendants for reimbursement of all Plaintiffs' attorney's fees and cost incurred in this action;
6. For such other relief as is necessary, including equitable and/or monetary relief for a just adjudication of this matter.
9. For any other relief as the Court deems just and proper under the circumstances.

DATED this 10th day of December, 2014.

        O'Grady & Wedemeyer

        WILLIAM J. O'GRADY, ESQ.
        Nevada Bar No. 10415
        DAVID J. WEDEMEYER, ESQ.
        Nevada Bar No. 11318
        410 S. Rampart Blvd., Suite 390
        Las Vegas, NV 89145
        (702) 726-6807
        *Attorneys for Plaintiffs*